IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dwight Xavier Jones, ) | C/A No. 0:09-269-HMH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Correctional Care Solutions; Dennis A. Tracy; ) | |
| Sgt. Klausen, Lexington County Detention ) | |
| Center; NFN Micken, Lexington County ) | |
| Detention Center; and James R. Metts, ) | |
| Lexington County Sheriff's Department, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Dwight Xavier Jones ("Jones"), filed this civil rights action asserting claims pursuant 42 U.S.C. § 1983 against the defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the summary judgment motion (Docket Entry 75) of Defendant Correct Care Solutions, Inc. ("Correct Care"), and the summary judgment motion (Docket Entry 79) of Defendants Tracey, Clawson, Mickens, and Metts (collectively the "Detention Center Defendants"). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Jones was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (Docket Entries 76 & 80.) Jones filed a document in response (Docket Entry 85) and then submitted additional attachments (Docket Entry 86). Jones also filed a letter that the court is interpreting as responsive to the defendants' motions. (Docket Entry 94.) Having carefully

---

[1] In their filings, the defendants have noted several misspellings or misidentifications in the caption of the Complaint. Defendant Correctional Care Solutions should be "Correct Care Solutions, Inc.," Defendant Tracy should be "Tracey," Defendant Klausen should be "Clawson," and Defendant Micken should be "Mickens." (See Defs.' Motions for Summ. J., Docket Entry 75 at 1 & Docket Entry 79 at 1.)

considered the parties' submissions and the applicable law, the court concludes that the defendants' motions should be granted.

## BACKGROUND

Viewed in the light most favorable to the plaintiff, the following facts are relevant to the resolution of the defendants' motions. On March 28, 2008, Jones was arrested by Defendant Tracey. He was then detained at the Lexington County Detention Center. Jones alleges that during his detention he was twice denied his "Ramadan lunch tray" and also that he received cold food that should have been heated in a microwave oven. (Compl., Docket Entry 1 at 3-4.) Additionally, he alleges that while there, another inmate broke Jones's nose during an altercation and that Jones received inadequate medical care following that incident. (Id.) Jones also raises claims regarding his arrest. (Id. at 4.)

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Jones's Claims**

    **1.     Detention Center Defendants**

The court finds that the Detention Center Defendants are entitled to summary judgment on Jones's claims.[2] First, all of the Detention Center Defendants are entitled to sovereign immunity regarding any claims for damages asserted against them in their official capacities. Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (concluding that sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities). As arms of the state, they are not "persons" within the meaning of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71

---

[2] The court observes that Jones has not addressed the Detention Center Defendants' motion with regard to his claims regarding his arrest and his food trays but rather has confined his filings to the issue of the medical treatment he received following his nose injury.

PJG

(1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983.").

Moreover, to the extent that Jones asserts claims against the Detention Center Defendants in their individual capacities, he has failed to allege any personal involvement by any of them in connection with his claims relating to his diet and medical care, and no personal involvement by Defendants Clawson, Mickens, and Metts in connection with his false arrest claim.[3] Accordingly, these claims fail, as the Detention Center Defendants cannot be held liable solely because of their supervisory roles. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[4]

Even if he had alleged any personal involvement by the Detention Center Defendants, Jones has failed to demonstrate any constitutional violation. First, in connection with his dietary claims, it is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted); see also Farmer v. Brennan, 511 U.S. 825, 833 (1994). The Constitution does not

---

[3] Jones's false arrest claim against Tracey fails for the reasons discussed separately below.

[4] The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisory liable for constitutional injuries inflicted by their subordinates).

guarantee, however, food that is prepared and served in a culinarily pleasing manner. See Lunsford v. Bennett, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); LaMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that a temporary diet of Nutraloaf did not rise to a constitutional violation); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Williams v. Berge, 102 Fed. Appx. 506, 507 (7th Cir. 2004) (unpublished) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted). Prisoners simply cannot expect the "amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988); see also Lasure v. Doby, C/A No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (unpublished) (noting that plaintiff was "being held in a [] jail facility, not a hotel"). Here, Jones alleges that a tray of food he was served needed to be heated in a microwave oven. He does not allege any illness or injury. Moreover, he has utterly failed to refute the Detention Center Defendants' proof that the trays he complains of are pre-cooked and require no additional heating. (O'Neill Aff. ¶¶ 15-16, Docket Entry 79-4 at 3.) Finally, his allegation that he was not provided a lunch tray during Ramadan fails to state a constitutional claim, since he again fails to refute the defendants' evidence that during Ramadan Muslims fast during daylight hours, and prisoners like Jones who request to be placed on the Ramadan fasting list are provided additional snacks in the evening to ensure that they receive a sufficient caloric intake. (O'Neill Aff. ¶¶ 8-9, Docket Entry 79-4 at 2.)

Similarly, Jones has failed to present any evidence showing that any of the Detention Center Defendants were deliberately indifferent to any serious medical need. The standard for reviewing

medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). To establish a claim, a detainee must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, a detainee must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation" of the Constitution. Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's disagreement as to the type

of care he should receive does not state a claim for deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Jones has not made the requisite showing. As stated above, Jones must demonstrate that the Detention Center Defendants had actual knowledge of a substantial risk of harm to Jones and disregarded that substantial risk. Farmer, 511 U.S. at 847. To establish a claim for denial of medical care against non-medical personnel, such as the Detention Center Defendants, Jones must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. In this case, Jones has made no allegation that the Detention Center Defendants knew of a health risk and failed to obtain care for Jones, interfered with his treatment, or were indifferent to any misconduct. Moreover, because most detention center officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the detainee. See id. Therefore, the Detention Center Defendants are entitled to summary judgment on this claim.

Finally, to the extent Jones asserts claims against Defendant Tracey stemming from his arrest, such claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), as Jones has pled guilty to at least one of the offenses for which he was arrested. Additionally, because Tracey arrested Jones pursuant to four arrest warrants, Jones cannot prevail on a claim of an unconstitutional arrest under § 1983. See Baker v. McCollan, 443 U.S. 137 (1979) (holding that the issuance of a facially valid warrant by a magistrate satisfies the probable cause standard).

The defendants also assert that they are entitled to qualified immunity. The court agrees. Qualified immunity shields governmental officials performing discretionary functions from liability

for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). In this case, because Jones has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

    **2.    Medical Claims Against Correct Care**

In his Complaint, Jones asserts claims against Correct Care arising out of the medical care he received following the injury to his nose. These claims fail because, as discussed above, Jones cannot show that Correct Care was deliberately indifferent to a serious medical need. In support of its motion for summary judgment, Correct Care has presented evidence, including Jones's medical records, showing that during his period of detention he received a substantial amount of medical care relating to his nose and sinus complaints, including a visit to the local emergency room to treat a sinus infection and a prescription for allergy medication in the spring of 2008 (Docket Entry 75-3 at 37-38); examination and pain medication following the fist fight in which his nose was allegedly injured in August of 2008 (Docket Entry 75-3 at 31, 34); x-rays of his nose in September of 2008 (Docket Entry 75-3 at 16); follow-up examination by medical staff in September, October, and November of 2008 (Docket Entry 75-3 at 10, 31, 33); and treatment in November and December of 2008 following a fall in the shower in which Jones injured his shoulder (Docket Entry 75-3 at 14,

32). Jones also received medical treatment twice in January of 2009, as well as in February and April. (Docket Entry 75-3 at 11-13, 17, 28-30.) At the April 2009 visit, the physician noted that Jones's arm problems were resolved and noted no other complaints by Jones. (Docket Entry 75-3 at 11.)

Jones's claim appears to chiefly stem from his belief that he should have been referred to a ear, nose, and throat specialist following his September 2008 x-ray which noted a possible fracture in his nose, rather than continuing to be treated by medical staff for allergy symptoms. However, as noted above, a prisoner's disagreement as to the type of care he should receive does not state a claim of deliberate indifference. See Wright, 766 F.2d at 849. Moreover, even accepting Jones's assertions regarding the appropriate treatment of his nose injury as true, his complaint at most states a claim of negligence or medical malpractice, which is not actionable under § 1983. See Estelle, 429 U.S. at 105-106 (indicating that claims alleging "an inadvertent failure to provide adequate medical care," or asserting negligence, are insufficient to constitute a constitutional deprivation and stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (stating that Daniels v. Williams, 474 U.S. 327 (1986), bars an action under § 1983 for negligent conduct); see also Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (indicating that errors in judgment and simple mistakes are insufficient to rise to the level of deliberate indifference). Finally, to the extent Jones's Complaint asserts a state law claim of medical malpractice, he has failed to introduce any expert testimony supporting his claim as required by South Carolina law. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993).

Correct Care also advances two additional arguments in support of its motion. However, for the reasons that follow, the court finds that these arguments do not provide sufficient bases for granting Correct Care's motion. First, Correct Care asserts that Jones's claim should be dismissed for failure to exhaust administrative remedies. The parties appear to agree that Jones filed internal grievances available through the Detention Center. Although Correct Care contends that Jones failed to properly exhaust because he did not seek review from the South Carolina Administrative Law Court, the court observes that state law does not provide for review by the South Carolina Administrative Law Court of decisions of county detention centers, in contrast to decisions of the South Carolina Department of Corrections. See Jones v. Bock, 549 U.S. 199, 218 (2007) (stating that exhaustion procedures are determined by the facility, not the Prison Litigation Reform Act); cf. Al- Shabazz v. State, 527 S.E.2d 742 (S.C. 2000) (providing for review by the Administrative Law Court of certain decisions of the Department of Corrections); S.C. Code Ann. § 1-23-600(D) (conferring authority on the Administrative Law Court to preside over all appeals from final decisions of certain state agencies including the Department of Corrections). Therefore, the court rejects this argument.

Second, Correct Care argues that since it is a private entity providing health care services to detainees pursuant to a contract with the Detention Center, it cannot be said to have acted under color of state law as required by 42 U.S.C. §1983. However, the court declines to recommend granting Correct Care's motion on this basis. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988) (holding that private physicians that contracted with the state to provide medical care to prisoners were state actors because they were hired to fulfill an obligation—providing medical care—which was traditionally fulfilled by the state); Millmine v. County of Lexington, C/A No. 3:09-1644-CMC, 2010 WL 412605 (D.S.C. Jan. 28, 2010) (unpublished) (considering whether Prison Health Services,

an independent health contractor with a detention center, acted under the color of state law and declining to dismiss it as a defendant in light of the absence of clear precedent on this issue and the Fourth Circuit authority holding that private physicians who treat prison inmates may be held liable under § 1983); Mavins v. McFadden, C/A No. 2:09-483-HFF-RSC, 2009 WL 4906573, *5 (D.S.C. Dec. 18, 2008) (unpublished) (rejecting the argument that actions by employees of Correct Care were not taken "under color of state law" as required by § 1983); Robinson v. Green, C/A No. 2:06-cv-985-RBH, 2007 WL 1447871 (D.S.C. May 11, 2007) (unpublished) (rejecting the argument that the medical defendants were not state actors because they were employed by Prison Health Services, an independent health contractor with a detention center).

### 3. Other State Law Claims

To the extent that Jones's Complaint can be construed to raise any other claims for relief under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

### RECOMMENDATION

Based on the above, the court recommends that the defendants' motions for summary judgment (Docket Entries 75 & 79) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 7, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).